UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BRANDON ROTHENBURGH,

          Movant,

   -vs-

UNITED STATES OF AMERICA,

          Respondent.

**DECISION AND ORDER**
**Civil Case**
**No. 6:19-cv-06820-MAT**

**Criminal Case**
**No. 6:12-cr-06162-FPG**

---

## I. Introduction

Proceeding <u>pro</u> <u>se</u>, Brandon Rothenburgh ("Rothenburgh") has filed a Motion to Vacate the Sentence pursuant to 28 U.S.C. § 2255 ("§ 2255"), alleging that he is being detained in the custody of respondent, the United States of America ("the Government"), pursuant to an unconstitutionally imposed sentence. For the reasons discussed below, Rothenburghh's § 2255 Motion is denied.

## II. Factual Background and Procedural History

Rothenburgh was charged in an Information with five counts of bank robbery in violation of 18 U.S.C. § 2113(a).

On November 28, 2012, Rothenburgh appeared with counsel before Honorable David G. Larimer, United States District Judge, and entered a plea of guilty to all five counts of bank robbery. Pursuant to plea agreement, the parties agreed on a sentencing range of 151 to 188 months' imprisonment based on a total offense level of 29 and a criminal history category of VI under the United States Sentencing Guidelines ("USSG"). As part of the plea

agreement, Rothenburgh agreed to waive both his appellate rights and collateral attack rights.

Prior to having the parties execute the plea agreement, Judge Larimer conducted an extensive plea colloquy during which he carefully reviewed the salient terms and confirmed that Rothenburgh was of sound mind, and had not been coerced in any way into pleading guilty, had reviewed the plea agreement with his attorney, and was satisfied with his attorney's representation. Judge Larimer informed Rothenburgh of the nature of criminal charges pursuant to 18 U.S.C. § 2113(a), the elements of the offense, and the maximum penalties that could be imposed.

Judge Larimer confirmed that there was an adequate factual basis to support each of the guilty pleas to the five counts and confirmed Rothenburgh's understanding of the potential penalties based on his criminal record and the USSG. Rothenburgh indicated his understanding that he was designated a career offender under USSG § 4B1.1 based on two prior felony convictions.

Judge Larimer ascertained that Rothenburgh understood that, pursuant to Fed. R. Crim. P. 11(c)(1)(C), he was agreeing to a specific sentencing range of 151 to 188 months' imprisonment. Judge Larimer then explained that the waiver of appellate and collateral attack rights contained in the plea agreement. Rothenburgh confirmed his understanding that, if he were sentenced to 188 months' imprisonment or less, he was forgoing his right to

appeal or collaterally attack his sentence. Rothenburgh executed the plea agreement in open court. Above the signature line is an attestation stating as follows:

> I have read the agreement, which consists of 18 total pages. I have had a full opportunity to discuss this agreement with my attorney, Steven Slawinski, Esq. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing voluntarily and of my own free will.

Plea Agreement (Gov't Ex. 1) at 18.

After Judge Larimer read the charges aloud to Rothenburgh, Rothenburgh entered his pleas of guilty to each of the five counts. Judge Larimer then announced the following finding:

> Based on Mr. Rothenburghh's plea and our discussion today, it's obvious to me that he's quite competent and capable of entering the pela. The plea does appear to be knowing and voluntary.

Plea Transcript (Gov't Ex. 2) at 27.

The United States Probation Office ("USPO") prepared Pre-Sentence Investigation Report ("PSR") and provided it to defense counsel prior to sentencing. Rothenburgh did not file objections to the PSR.

Rothenburgh appeared for sentencing on February 7, 2013. Judge Larimer imposed a term of 165 months' imprisonment, which was well-within the agreed-upon range set forth in the plea agreement.

The judgment of conviction was entered February 22, 2013. Rothenburgh did not file a notice of appeal.

In 2016, Rothenburgh filed a § 2255 motion to vacate his sentenced based on the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015). However, the parties stipulated to withdrawal of this motion in 2017.

On November 1, 2019, Rothenburgh filed the present § 2255 motion. He principally argues that his sentence should be vacated in light of United States v. Shelby, 939 F.3d 975, 980-81 (9th Cir. 2019) (holding that indictments for defendant's Oregon first-degree robbery convictions did not clearly establish which subsection of statute, Or. Rev. Stat. § 164.415(1), he was accused of violating, and thus convictions did not constitute predicate "violent felonies" under Armed Career Criminal Act's ("ACCA") force clause, 18 U.S.C. § 924(e)(2)(B)(i) under modified categorical approach; even if statute was divisible, and one subsection required use or attempted use of dangerous weapon, where other subsection did not require use or attempted use of weapon, and indictments did not specify under which subsection he was being charged, and did not allege that he used or attempted to use weapon during charged robberies). According to Rothenburgh, based on Shelby, his July 25, 2008 felony conviction in Monroe County Court, State of New York, for Robbery in the Third Degree no longer qualifies as a predicate

for purposes of the career offender sentencing enhancement in USSG § 4B1.1.

The Government filed a Motion to Dismiss (ECF #44), arguing that Rothenburgh's § 2255 motion is untimely, is procedurally barred by his collateral attack waiver, and is, in any event, without merit. The Government argues that Shelby is inapposite because Rothenburgh was neither sentenced pursuant to ACCA, nor subject to an Oregon first-degree robbery conviction.

Rothenburgh filed a letter (ECF #47) that indicates it is in reply but it does not substantively address any of the Government's arguments.

### III. Timeliness

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), "imposes a one-year statute of limitations on motions set aside sentences imposed, inter alia, 'in violation of the Constitution or laws of the United States.'" United States v. Wright, 945 F.3d 677, 683 (2d Cir. 2019) (quoting 28 U.S.C. § 2255(a), (f)). The one-year period "shall run from the latest of—(1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was

initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(1)-(4).

Rothenburgh does not suggest that he was impeded from filing in a timely fashion by any governmental action, and therefore subsection (2) of § 2255(f) does not apply. Likewise, Rothenburgh has not proffered any newly discovered evidence in support of his motion, meaning that subsection (4) of § 2255(f) is inapplicable. The only two possible start-dates for the one-year limitations period in Rothenburgh's case are § 2255(f)(1) and (3).

The Court first must determine the date on which the § 2255 motion was filed. Because Rothenburgh is an incarcerated litigant proceeding pro se, the prison mailbox rule applies. See Moshier v. United States, 402 F.3d 116, 117 (2d Cir. 2005) (per curiam) (applying prison mailbox rule to § 2255 motion). Under this rule, "[w]hen a prisoner is proceeding pro se . . . federal courts generally consider his or her petition for habeas corpus to have been filed as of the date it was given to prison officials for forwarding to the court clerk." Adeline v. Stinson, 206 F.3d 249, 251 n.1 (2d Cir. 2000) (per curiam). The Second Circuit has "never required prisoners to provide affidavits of service to verify when

they give their documents to prison officials." Hardy v. Conway, 162 F. App'x 61, 62 (2d Cir. 2006) (summary order). Rather, "in the absence of contrary evidence, district courts in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing." Id. (collecting cases).

The Government has overlooked the prison mailbox rule, asserting that the § 2255 motion was filed on November 4, 2019, the date it appeared on the Court's docket. The Government is incorrect.

Here, Rothenburgh's § 2255 motion contains a declaration, signed under penalty of perjury, that his § 2255 motion was placed in the prison mailing system on October 31, 2019. See § 2255 Motion (ECF #42) at 12. Therefore, the Court deems Rothenburgh's § 2255 motion to have been filed on October 31, 2019.

The Court next examines whether the § 2255 motion is timely if, pursuant to § 2255(f)(1), the date the judgment became final is used as the start-date for the limitations period. Section 2255(f)(1) does not define when a conviction becomes "final" for purposes of the limitations period. Moshier, 402 F.3d at 118. The Second Circuit has held that "an unappealed federal criminal judgment becomes final for purposes of § 2255 . . . when the time for filing a direct appeal expires." Id. (citing Sanchez-Castellano v. United States, 358 F.3d 424, 428 (6th Cir. 2004) (finding that, for purposes of § 2255 motions, "an unappealed federal criminal

judgment becomes final ten days after it is entered"); Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999) (holding that "[i]f a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired")).

Here, the judgment against Rothenburgh was entered on Friday, February 22, 2013. His conviction became final for AEDPA purposes on Monday, March 4, 2013.[1] The § 2255 motion, filed on October 31, 2019, was not filed until 6 years, 7 months, and 27 days after the judgment became final. It is, therefore, clearly untimely under § 2255(f)(1).

The Court next considers if § 2255(f)(3) can serve as the start-date for the limitations period. In order for this subsection to apply, Rothenburgh must demonstrate that the constitutional right on which he relies was recognized by the Supreme Court and made retroactively applicable to cases on collateral review. Rothenburgh relies solely on a Ninth Circuit case that did not create a new constitutional right and, moreover, is not factually

---

[1] Under Fed. R. App. P. 4(b), a defendant's notice of appeal from a judgment of conviction must be filed within ten days of the date of judgment. According to Fed. R. App. P. 26(a)(2), as amended December 1, 2002, and currently enacted, "[w]hen the period is stated in days or a longer unit of time: (A) exclude the day of the event that triggers the period; (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. App. P. 26(a)(2).

or legally apposite to his case. Because Rothenburgh is not relying on a constitutional right made retroactively applicable to cases on collateral review by the Supreme Court, he cannot avail himself of the later start date in § 2255(f)(3).[2]

Having found that Rothenburgh's § 2255 motion is untimely, the Court must assess whether the limitations period may be equitably tolled. Because "the deadlines created by 28 U.S.C. § 2255(f) are not jurisdictional[,]" United States v. Wright, 945 F.3d 677, 684 (2d Cir. 2019) (citations omitted), "a petitioner is entitled to equitable tolling of the one-year statute of limitations if he shows: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Id. (quoting Holland v. Florida, 560 U.S. 631, 649 (2010); internal quotation marks omitted in original).

Here, Rothenburgh has not attempted to demonstrate entitlement to equitable tolling. Indeed, such a showing is not possible on the present record, given that Rothenburgh's sole habeas claim is based on a Ninth Circuit decision that was not issued until September 19, 2019. Accordingly, the Court finds no basis to equitably toll the limitations period.

---

[2] While Rothenburgh did file a § 2255 motion in 2016 that relied on the Supreme Court's 2015 Johnson decision that was made retroactively applicable to cases on collateral review, he stipulated to withdraw that application in 2017. The 2016 § 2255 motion is wholly unrelated to the instant motion.

**IV. Conclusion**

For the foregoing reasons, the Government's Motion to Dismiss is granted on the basis that the § 2255 Motion is untimely. Accordingly, the § 2255 Motion is dismissed. No certificate of appealability shall issue because Rothenburgh has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Clerk of Court is directed to close civil case, Rothenburgh v. United States, No. 6:16-cv-06366-MAT.

**SO ORDERED.**

S/Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated: January 22, 2020
Rochester, New York.